WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ARMAND AVERY, individually and on behalf of J.A a minor child,<br><br>Plaintiff,<br>vs.<br><br>CITY OF SEATTLE AND SEVERAL UNKNOWN OFFICERS<br>Defendants | NO:<br><br>COMPLAINT FOR DAMAGES<br><br>(JURY DEMAND) |

I.  NATURE OF ACTION

1.1 <u>Introduction.</u>  This is a civil rights action brought by the plaintiffs pursuant to 42 U.S.C. § 1983 and the fourth and fourteenth amendments against the City of Seattle and several currently unknown officers.  State claims include the tort of outrage, assault, negligence and violations of RCW 49.60.060.

COMPLAINT FOR DAMAGES - 1

## II.  PARTIES

2.1 <u>Plaintiff Armand Avery.</u>  Armand is a resident of Pierce County, Washington and the father of J.A. who is a minor child.

2.2 <u>Plaintiff J.A.:</u> J.A. is a minor child who resides with his father Armand Avery in Pierce County, Washington.

2.3 <u>Defendant City of Seattle.</u>  Seattle is a municipal corporation located in the Western District of Washington.  At all times relevant times, all individual Defendants named herein were agents of City of Seattle, acting within the scope of their employment, and under color of state law.

2.4 <u>John and Jane Doe Officers:</u>  There are several unknown Seattle Police Officers that participated in the events that form the basis for this lawsuit.  These officers were acting within the course and scope of their employment with the City of Seattle and were acting under color of law at all relevant times.

## III.  JURISDICTION AND VENUE

3.1 **Federal Jurisdiction.**  This Court has Jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C §§ 1331 and 1343

3.2 **Jurisdiction over State Claims.**  This Court has jurisdiction over Plaintiffs' 1367 state law claims pursuant to 28 U.S.C. § 1367.

3.3 **Venue.**  Venue is appropriate in the Western District of Washington pursuant to 28 U.S.C.§

1391 because at least some of the Defendants reside in this judicial district and because the events and omissions giving rise to the claims alleged herein occurred within the Western District of Washington.

## IV.  FACTUAL BACKGROUND

4.1 Armand Avery is an African American man who is dedicated to his family and social justice.

4.2 Mr. Avery believes it is important to teach his children to stand up for civil and human rights.

4.3 On May 25, 2020, George Floyd was murdered by a Minneapolis police officer.  The murder was captured on video and sparked national attention.

4.4 The national attention surrounding George Floyd's murder quickly lead to a larger national discussion about the use of excessive force by police officers against people of color.

4.5 In response to the Murder of George Floyd by Minneapolis police officers and other high profile police excessive force cases, people began to march and rally for police accountability.

4.6 Within days of George Floyd's murder, hundreds of thousands of people were marching all over the United States while chanting "Black Live's Matter."

4.7 In addition to chants, people carried signs that had the pictures of individuals that had been killed by police officers. Many of the pictures were people of color that had been killed by police.

4.8 On May 30th, 2020, Armand Avery decided to participate in a peaceful rally and protest held in downtown Seattle near Westlake Mall.   The event at Westlake was authorized by the City of Seattle.

4.9 Armand Avery went to this march with his family and church members.

4.10    Among the family members that went with Armand Avery was his seven year old son J.A.

4.11     Armand and his family arrived at Westlake Center on May 30, 2020, at or around 2:15 p.m.

4.12     At the rally, Armand and his family stood peacefully waiting for the speakers to begin to speak.

4.13     Armand and his family noticed there was a significant police presence at the Rally. The officers Armand and his family saw appeared to be in riot gear.

4.14     The Seattle Police Officers, dressed in all black uniforms, formed a line across 4th avenue intended to keep vehicle traffic away from protests and allow for safe entrance into Westlake park.

4.15     The Seattle Police Officers assigned to the Westlake area of Seattle to protect people who planned to attend the rally and surrounding property.

4.16     Seattle Police Officers are typically provided with MK-4 Cannisters of OC spray for daily use.  MK-4 cannisters typically have a smaller dispersal making it easier to avoid impacting individuals that have not done anything to justify being sprayed.

4.17     On May 20, 2020, many of the Seattle Police Officers assigned to the Westlake area were provided with MK-9 Cannisters of OC Spray.  The MK 9 cannisters have a range of up to 18 feet and is generally to reach further into large crowds.

4.18     In addition to MK-9 Cannisters, officers were armed with long batons.   The long batons were un sheathed and held by officers in an aggressive manner.

4.19     It appeared to Armand and his family that officers were actually seeking to instigate confrontations between those that were peacefully protesting and law enforcement.

4.20     While some of the participants in the rally were in verbal exchanges with law enforcement.  During the time period that Armand and his family were at the event they did not see any civilians being violent toward officers or in possession of weapon

4.21     At approximately 3:00 p.m. on May 30, 2020, officers pushed through the crowd to the area near where Armand and his family were standing peacefully and sprayed OC spray at them.

4.22    Seven year old A.J., was hit with OC spray directly in his face.

4.23    Armand Avery was also hit with OC spray.

4.24    There was no warning prior to the officer spraying Armand and A.J.

4.25    A.J. immediately felt like his face was on fire and he was having difficulty breathing. He was crying out in pain and shaking. Armand was doing the best he could to help A.J. while also dealing with his own pain.

4.26    As a result of being sprayed with OC spray, Armand felt burning in his eyes and had difficulty breathing.

4.27    Videos and pictures were taken of the aftermath of A.J. being sprayed with OC spray. In the videos, A.J. can be seen crying out in pain and shaking. Clearly, he was in tremendous pain.

4.28    The video of A.J. experiencing significant pain after having been sprayed with OC spray has gone viral.

4.29    A person who was nearby, came to A.J's aid and poured milk on him in an attempt to alleviate the pain.

4.30    Armand and his family quickly left the rally because Armand and A.J. were in so much pain.

4.31    Armand and his family left the Westlake Rally prior to the mayor issuing a curfew.

4.32    A.J. cried out in pain and felt as though his face was on fire during the entire ride home.

4.33    Once they got home, A.J. and Armand attempted to take showers to ease the pain. That did not work.

4.34    A.J. and Armand also tried to use ice to ease the pain. Ice did not help ease the pain either.

4.35 A.J. could not sleep most of the night and continued to cry because he was in so much pain. Being sprayed with OC spray was clearly traumatic to him.

4.36 Within 24 hours, Armand and A.J. went to the hospital for treatment for their injuries.

4.37 A.J. and Armand were diagnosed with chemical burns.

4.38 A.J. was prescribed topical ointment for his injuries.

4.39 Armand was told to use the same topical ointment that was prescribed to A.J.

4.40 A.J's birthday is on June 1st. The actions of the officers, ruined A.J's 8th birthday.

4.41 Both AJ and Armand experienced significant harm as a result of the officer's actions.

4.42 The injuries experienced by the plaintiffs continue to impact them emotionally.

4.43 A.J. and Armand did not do anything to justify being sprayed with OC spray. They were simply exercising their constitutional rights.

## V. VIOLATION OF WASHINGTON STATE LAW AGAINST DISCRIMINATION

5.1 Plaintiffs incorporates by reference paragraphs through

5.2 All Defendants are liable to all Plaintiffs for violation of the Washington State Law Against Discrimination (RCW 49.60.030)

5.3 RCW 49.60.030 dictates that individuals within the State of Washington have a right to be free from discrimination because of race, creed, color, national origin, citizenship or immigration status, sex, honorably discharged veteran military status, sexual orientation, or the presence of any sensory, mental, or physical

disability or the use of a trained dog guide or service animal by a person with a disability is recognized as and declared to be a civil right.

5.4   Armand Avery is an African American.

5.5   J.A. is an African American.

5.6   The May 30, 2020 rally was intended to address disproportionate excessive force used unjustly against African Americans and other people of color.

5.7   The use of noxious gases against individuals exercising their constitutional right to speak out about issues of inequity in support of members of a protected class constitutes a violation of the Washington Law Against Discrimination.

5.8   The targeted use of noxious gas and excessive force against members of a protected class is a violation of the Washington State Law Against Discrimination.

5.9   Any person who deems herself or himself injured by any act in violation of the Washington State Law Against Discrimination shall have a civil action in a court of competent jurisdiction.

5.10   The Seattle Police Department used excessive force against Armand Avery while he was peacefully exercising his right to free speech in an effort to reduce excessive force against African American people.

5.11   The Seattle Police Department used excessive force against A.J. while he was peacefully exercising his right to free speech in an effort to reduce excessive force against African American people.

## VI. TORT OF OUTRAGE

6.1   Plaintiffs incorporate by reference all previous paragraphs.

6.2   All Defendants are liable to all Plaintiffs for the Tort of Outrage.

6.3   Spraying a peaceful seven year old child in the face with a noxious gas is extreme and outrageous conduct.

6.4   The officers who sprayed the noxious gas into A.J.'s face did so either intentionally or recklessly.

6.5  The result of the officer's actions caused A.J. and his father Armand severe emotional distress.

## VII. NEGLIGENCE:

7.1  Plaintiff incorporates by reference all previous paragraphs

7.2  The City of Seattle, through its officers, owes a duty of care to person with whom they foreseeably interact with when they are dispatched to a particular scene.

7.3  The Defendant Officers, owe a duty of care to persons with whom they foreseeably interact with when they are dispatched to a particular scene.

7.4  The Defendant officers were dispatched to the scene where the plaintiff's were pepper sprayed by the Seattle Police Officers.

7.5  The Defendant officers were dispatched to the scene to protect people that were attending the May 30, 2020 rally and nearby property.

7.6  The Defendant Officers breached their duty to protect the plaintiff's when they unjustifiably sprayed them with pepper spray.

## VIII. INDEMNIFICATION

8.1  Plaintiff incorporates by reference all paragraphs in this Complaint.

8.2  In committing the acts alleged in this complaint, the defendant officers acted at all relevant times within the scope of their employment for the city of Seattle.

8.3  As a result, pursuant to state law, the City of Seattle must indemnify the defendant officers for any judgment against them.

## IX. RESPONDEAT SUPERIOR

9.1 Plaintiff incorporates by reference all paragraphs in this complaint.

9.2 In committing the acts alleged in this complaint, the defendant Seattle Police Officers acted at all relevant times within the scope of their employment with the City of Seattle.

9.3 Defendant City of Seattle, as principal, is liable for all tort committed by its Agents. Seattle, as principal, should also be liable for the constitutional violations committed by its officers, pursuant to common law as understood in 1871, and Because by law and county ordinance is wholly responsible for providing the Defense of the individual Defendant Officers and for indemnifying them against any judgment or verdict that may result.

## X. 42 U.S.C. § 1983

10.1 Plaintiff incorporates by reference all paragraphs in the complaint.

10.2 By virtue of the facts set forth in this complaint, all Defendants are liable for Compensatory and punitive damages for deprivation of civil rights of plaintiff Armand Avery.

10.3 By virtue of the facts set forth in this complaint, all Defendants are liable for compensatory and punitive damages for deprivation of civil rights of plaintiff J.A.

10.4 The defendants used excessive force against the plaintiffs.

10.5 The defendants unlawfully seized the plaintiffs.

## XI. MONELL CLAIM

11.1 Plaintiffs incorporates by reference all paragraphs set forth above against the City of Seattle

11.2 for the violation of their civil rights.

11.3 Defendants have a duty to use reasonable care in hiring, training and supervising their employees and agents.

11.4 The described conduct of the defendant officers in this complaint was undertaken pursuant to the policies, practices, and customs of the City of Seattle, such that the City is liable to the plaintiffs in the following ways:

   a. The City, through its approval of the Defendant Officers actions, has ratified the Defendant Officers acted pursuant to the and in a manner consistent with the policies, customs, and practices of the City;

   b. As a matter of both policy and practice, the City encouraged, and was thereby the moving force behind, the misconduct at issue here by failing to adequately train, supervise, control and discipline its officers such that its failure to do so manifested a deliberate indifference;

   c. As a matter of both policy and practice, the city of Seattle has facilitated the very type of misconduct at issue here by failing to adequately investigate, punish and discipline prior instances of similar misconduct, thereby foreseeably leading its officers to believe their actions will never be meaningfully scrutinized and, in that way, encouraging and predictably resulting in unreasonable uses of excessive force such as those the Plaintiffs complain of;

   d. Upon information and belief, the City of Seattle maintains written polices pertaining to crowd control and rallies, however, there are clear problems with the policies and their implementation.

   e. The City of Seattle did not effectively train its officers to discern between those that are peacefully exercising their first amendment rights and those that may be in violation of the law.

    f.   The City of Seattle did not develop an effective plan that allowed for individuals to exercise their first amendment rights.

    g.   The City of Seattle has a longstanding tradition of failing to hold officers accountable for using excessive force against crowds of individuals that are exercising their first amendment rights.

    h.   The City of Seattle and its police department were under a federal consent decree with the department of justice that dates back to 2012. The Consent decree was, in part, implemented as a result of long standing concerns about the Seattle Police Departments use of force against people of color.

## XII. ASSAULT

12.1   Plaintiffs incorporates by reference all paragraphs all paragraphs in this complaint.

12.2   By virtue of the facts set forth in this complaint, all defendants are liable for assault of the plaintiffs.

### VI. REQUEST FOR RELIEF

WHEREFORE, Plaintiffs pray for the following relief:

1. Awarding plaintiff special damages in such amount as shown at trial.
2. Awarding plaintiff general damages in such amount as shown at trial.
3. Awarding plaintiff costs and attorney fees.
4. Awarding plaintiff punitive damages.
5. Such additional relief which the court finds equitable and just.

DATED this 26th day April , 2022

**JAMES BIBLE**

*[signature]*

James Bible, WSBA No. 33985
Attorney for Plaintiff
14205 SE 36th Street Suite 100
Bellevue, WA  98006
Telephone:  (425) 748-4585
E-mail:  jbiblesblaw@gmail.com